In the Matter of ASSOCIATED TEACHERS OF HUNTINGTON, INC., Respondent, v. BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT No. 3, TOWN OF HUNTINGTON, Appellant.

Second Department, November 27, 1972.

*Joseph W. Campanella* for appellant.

*Kaplowitz & Galinson* (*Daniel Galinson* of counsel), for respondent.

SHAPIRO, J. The issues before us are whether certain members of the petitioner (an association of teachers and other professional personnel employed by the appellant) had an enforceable contractual right to sabbatical leave prior to April 12, 1971 and, if not, whether the finding of an arbitrator that they had such a right was in excess of his powers and must therefore be vacated.

The collective bargaining agreement between the petitioner and the appellant Board of Education covered the period 1969–1971. It provided that applications for sabbatical leaves must be filed before April 1 of the preceding school year and that the board shall ordinarily take action on such applications during the month of April. A number of teachers submitted timely applications for sabbatical leaves to commence with the school year beginning July 1, 1971.

On April 12, 1971 the Legislature amended article 5 of the Civil Service Law, effective immediately, by adding section 82 thereto, which declared a one-year moratorium on leaves of absence and sabbatical leaves of absence, commencing July 1, 1971. Subdivision 3 of section 82 provides that the amendment shall not be construed to impair any contractual rights to sabbatical leaves if those rights were '' in existence and enforceable '' prior to the statute's effective date.

On May 1, 1971, William Keough, the Superintendent of Schools, notified all teachers that, in accordance with this legislation, the board would grant no leaves of absence for the 1971–1972 school year. No action had yet been taken on any of the applications for sabbatical leave.

Three teachers invoked the grievance procedure established in the contract between the parties. The dispute could not be resolved and an arbitrator was appointed. After a hearing, he concluded that the board had improperly denied all applications for sabbatical leave, on the ground that the teachers had had a contractual right thereto prior to April 12, 1971. The board was thereupon directed to consider each application on its merits in accordance with the criteria set forth in the collective bargaining agreement. The arbitrator's award was confirmed at Special Term.

The collective bargaining agreement between the parties establishes the maximum number of sabbatical leaves allowable in any one year at 3% of the staff. In passing upon such applications the Superintendent and the board are required to consider the following factors: years of service since the last sabbatical leave, the type of research, study, travel or other activity planned; the value of the research or study to the school district; the urgency of the proposed research or study; and the relationship of the research or study to the professional growth of the applicant.

The agreement does not contain an undertaking on the part of the board to grant requests for sabbatical leaves upon a mere demand therefor. On the contrary, it clearly vests discretion in the board to grant or deny applications for sabbatical leave after applying the enumerated criteria. It is therefore clear that the contractual rights, if any, which teachers may have had to sabbatical leaves were not " in existence and enforceable " prior to April 12, 1971 (see *Legislative Conference of City Univ. of N. Y.* v. *Board of Higher Educ. of City of N. Y.*, 67 Misc 2d 648, mod. on other grounds 38 A D 2d 524; *Matter of Ewen* v. *Board of Educ. of Union Free School Dist. No. 18 of Plainedge*, 39 A D 2d 605).

Having determined that section 82 of the Civil Service Law barred the grant of sabbatical leaves for the school year 1971–1972 to teachers employed by the appellant, the remaining issue to be determined is whether the arbitrator exceeded his powers in construing the collective bargaining agreement to mean that the teachers in question had enforceable contractual rights to

sabbatical leaves prior to April 12, 1971 and ordering that the appellant consider and process the applications therefor.

The general rule is that, if a matter is properly before an arbitrator, a mistake of law or fact on his part will not justify vacatur of his award (*Matter of Burt Bldg. Materials Corp. [Local 1205, Int. Brotherhood of Teamsters]*, 18 N Y 2d 556, 558; see, also, *Matter of Granite Worsted Mills [Aaronson Cowen, Ltd.]*, 25 N Y 2d 451, 455). This rule, however, is not applicable in cases in which the award of the arbitrator contravenes public policy or violates a State statute.

In *Matter of Aimcee Wholesale Corp. (Tomar Prods.)* (21 N Y 2d 621), the court noted that resolution of antitrust problems, involving, as they do, considerations of public policy of the first magnitude, is not a proper subject for arbitration.

Since the courts thus have the power to prevent an arbitrator from rendering an award which requires the doing of an act which is prohibited by law or is offensive to public policy (*Matter of National Equip. Rental [American Pecco Corp.]*, 35 A D 2d 132, 135, affd. 28 N Y 2d 639; *Matter of Allied Van Lines [Hollander Express & Van Co.]*, 29 N Y 2d 35; *Matter of Kramer & Uchitelle [Eddington Fabrics Corp.]*, 288 N. Y. 467), it follows by a parity of reasoning that, if the arbitrator's award entails the commission of acts prohibited by State statute, the award should be vacated (see *Matter of Western Union Tel. Co. [Amer. Communications Assn., C.I.O.]*, 299 N. Y. 177).

Section 82 of the Civil Service Law was enacted as an emergency measure upon a message of necessity from the Governor as one of a number of laws deemed necessary to meet a grave fiscal crisis which confronted the State and virtually all local governments (see *Central School Dist. No. 2 v. Ramapo Cent. School Dist. No. 2 Teachers Assn.*, 67 Misc 2d 317, 320). As such, it represented a clear public policy. The arbitration award before us contravenes that policy and not only authorizes but directs the doing of an act prohibited by statute.

Hence, as a matter of law, the award exceeded the powers of the arbitrator (CPLR 7511, subd. [b], par. 1, cl. [iii]) and must be vacated. Accordingly, the order and judgment under review should be reversed on the law, without costs, and the application to confirm the award should be denied and the cross motion to vacate the award granted, without costs.

Hopkins, J. (dissenting). I do not find any violation of public policy in the arbitration process in which the parties before us

engaged.[1] There is nothing in the statute which prevents the enforcement of the arbitrator's award; indeed, as I read the statute, it authorizes the consideration of the issues before the arbitrator.

Section 82 of the Civil Service Law (L. 1971, ch. 124, eff. April 12, 1971), declaring a moratorium on sabbatical leaves for the school year 1971–1972, states further that its provisions " shall not be construed so as to impair any contractual right to a leave of absence or sabbatical leave of absence where such contractual right was in existence and enforceable prior to the effective date of this section." Hence, the statute recognized, as perhaps the constitutional mandate banning the impairment of the obligation of contracts requires (U. S. Const., art. I, § 10), that sabbatical leaves already granted on the effective date of the legislation must be honored.

The collective bargaining agreement between the parties stipulated both a grievance procedure for the resolution of disputes and arbitration of the disputes in the event of the failure of the grievance procedure to adjust the differences between the parties. Moreover, the agreement provided for sabbatical leaves in rather elaborate detail as to eligibility of applicants, number and criteria. It provided that applications must be filed on or before April 1 of the preceding school year and that action on the applications by the appellant shall ordinarily be taken during the month of April.

The question before the arbitrator was whether the appellant had transgressed the agreement. Necessarily, that question depended on whether there existed a contractual right to sabbatical leaves. When the arbitrator found that such a contractual right was in existence and enforceable, he did no more than section 82 of the Civil Service Law permitted. His findings, in short, did not violate the provisions of the statute or the public policy reflected by its terms; they were, indeed, consonant with the saving clause contained therein.

In the field of labor relations, arbitration is preferred as a procedure to settle controversies between employer and employee

---

1. No stay of arbitration was sought by the appellant; nor does the record disclose that the appellant at the hearing before the arbitrator reserved its right to question the arbitrability of the issues or the jurisdiction of the arbitrator under the collective bargaining agreement. There is, therefore, implicit in the case the point whether this failure by the appellant constituted a waiver (cf. *Matter of National Cash Register Co.* [*Wilson*], 8 N Y 2d 377; Anno. 33 ALR 3d 1242). That point, however, would raise the additional point whether the force of the public policy in issue would permit a waiver; and I have preferred to meet the issue on its merits (but, see CPLR 7503, subd. [b]).

to such an extent that it can be said that public policy underlies and reinforces its use (cf. *Matter of Howard & Co.* v. *Daley,* 27 N Y 2d 285; *Matter of Long Is. Lbr. Co.* [*Martin*], 15 N Y 2d 380; *Steelworkers* v. *Enterprise Corp.,* 363 U. S. 593). Any doubt whether a particular issue relating to an employee grievance is embraced within a submission to an arbitrator should be resolved in favor of coverage (*Matter of Fitzgerald* [*General Elec. Co.*], 23 A D 2d 288, 290, affd. 19 N Y 2d 325); nor is there any impediment to arbitration in determining disputes between teachers and boards of education (*Board of Educ., Union Free School Dist. No. 3, Town of Huntington* v. *Associated Teachers of Huntington,* 30 N Y 2d 122).[2]

But it would assuredly be a false conflict of two opposing public policies to pit the one favoring arbitration under collective bargaining agreements against the other declaring a moratorium for a year on sabbatical leaves, for, as has been observed, the statute embodying the latter expressly sanctioned contractual rights in existence and enforceable prior to its effective date — the very issue before the arbitrator here.

What the appellant in substance argues is that the arbitrator mistook the law and the facts before him. That contention, it has been long held, does not justify vacating his award (*Matter of Wilkins,* 169 N. Y. 494; *Matter of Burt Bldg. Materials Corp.* [*Local 1205, Int. Brotherhood of Teamsters*], 18 N Y 2d 556; *Matter of Granite Worsted Mills* [*Aaronson Cowen, Ltd.*], 25 N Y 2d 451). Whether as of April 12, 1971 — the effective date of the statute — a contractual right had come into existence was clearly within the competence of the arbitrator to decide and it is not for the courts to interfere with his decision.

I would therefore affirm the order and the judgment.

MUNDER and LATHAM, JJ., concur with SHAPIRO, J.; HOPKINS, J., dissents and votes to affirm the order and the judgment, with an opinion, in which RABIN, P. J., concurs.

Order and judgment reversed, on the law, without costs, and application to confirm the award denied and cross motion to vacate the award granted, without costs.

---

2. Even if it were found that the submission presented an issue of public policy — a conclusion not apparent on this record — that finding in itself would not necessarily mean that the arbitration could not proceed. Though the issue of public policy may not be arbitrable, questions of contract violations not connected with the issue of public policy must be determined by the arbitrator (*Matter of Allied Van Lines* [*Hollander Express & Van Co.*], 29 N Y 2d 35, 43; *A. & E. Plastik Pak Co.* v. *Monsanto Co.,* 396 F. 2d 710). This would apply to the issue of contractual rights existing before the statute was enacted.